GEORGE A. WILSON, Appellant, v. FRANK S. SHAW, Auditor of State, Appellee.

**CONSTITUTIONAL LAW:** Construction—In re Increase in Salaries. The constitutional provision which provides that the salary of district judges shall not be increased or decreased ''during the *term*''

for which a judge has been elected, means that the salary shall not be increased or decreased *during a constitutional term of four years* for which a judge has been elected. In other words, in case of death or resignation, an incumbent appointed or elected to serve out a *portion* of a constitutional term of four years is not entitled to an increase in salary authorized after the inception of said *term* and before the vacancy occurred.

WEAVER, EVANS, and PRESTON, JJ., dissent.

*Appeal from Polk District Court.*—J. D. WALLINGFORD, Judge.

JUNE 23, 1922.

ACTION in mandamus to require the defendant as auditor of state to issue a salary warrant alleged by plaintiff to be due him as a district judge on the basis of $4,000 per annum. The opinion states the facts. Petition was dismissed by the trial court and plaintiff appeals.—*Affirmed.*

*Ladd, Warren & Ladd* and *Parrish, Cohen & Guthrie,* for appellant.

*Clarke & Cosson,* for appellee.

DE GRAFF, J.—This is an action in mandamus. The defendant Frank S. Shaw at the time of the commencement of the suit was the duly elected and qualified auditor of state of the state of Iowa and among other things is charged by law to issue warrants of the state of Iowa upon the treasurer of said state for sums due as salaries to the several district judges of the state. Plaintiff alleges ''that on or about the 19th day of December 1917 he was duly appointed judge of the district court for the ninth judicial district of Iowa by the Hon. W. L. Harding, governor of the state of Iowa, to fill the vacancy caused by the death of Judge C. A. Dudley * * * who had been regularly elected as judge of said judicial district for the term of four years beginning January 1, 1915 and ending December 31, 1918.'' Plaintiff was duly commissioned as district judge and took the required oath of office. Following the appointment, plaintiff was duly elected at the next general election (November

5, 1918) as judge of the said district court for the remainder of the unexpired term for which he was appointed.

On the 12th day of April 1917 the thirty-seventh general assembly of the state of Iowa enacted Chapter 235 amending Section 253 of the Supplement of the Code 1913 relating to the compensation of district judges by striking therefrom the words "thirty-five hundred" and inserting in lieu thereof the words "four thousand." This act was duly approved by the governor of the state and became effective by constitutional provision July 4, 1917.

Plaintiff further alleges that under and by virtue of this legislative enactment that he, as judge of the district court of Iowa, became entitled to compensation at the rate of $4,000 per year and that the defendant auditor of state is legally obligated to issue and deliver to him as said judge the proper warrant drawn on the treasurer of the state for the increased salary due plaintiff from and after the 19th day of December 1917, on which date plaintiff assumed the duties of office as district judge.

The record further discloses that plaintiff holds by assignment a similar claim of Joseph E. Meyer who was duly appointed a judge of the district court for the ninth judicial district of Iowa by the governor on or about January 19, 1918 to fill a vacancy caused by the resignation of Judge Chas. Hutchinson who had been appointed within the same term by the governor of the state to fill a vacancy caused by the resignation of Judge W. H. McHenry. It appears from the stipulation of facts filed by the parties hereto that W. H. McHenry was a duly elected judge of the district court as aforesaid for the term of four years beginning January 1, 1915 and ending December 31, 1918. Following the appointment of Judge Meyer he was duly elected at the next general election for the remainder of the unexpired term.

Defendant for answer admits that the defendant auditor has refused to issue the warrants to plaintiff as said judge for said salary for the periods of time set forth in plaintiff's petition at any other rate or in any other or greater sum than at the rate of $3,500 per annum, and further alleges that at the time of the succession of plaintiff and his assignor Joseph E. Meyer that

the term of office of their said predecessors had not expired and that plaintiff and his assignor "continued to hold over in office upon unexpired terms—neither incumbent entering upon a new term and hence not entitled to the increase of salary provided for by Chapter 235 of the Acts of the Thirty-seventh General Assembly because of the constitutional provision forbidding the increase of the compensation of a judge 'during the term for which he shall have been elected.'"

It must be conceded that the appellant George A. Wilson was filling a vacancy in a judicial office during the time in question. Chas. A. Dudley was elected district judge at the general election in November 1914 and was elected for the full constitutional term of four years. By virtue of his oath of office he entered upon the discharge of his duties January 1st, 1915 and his certificate of election was for the constitutional term of four years from said date. Judge Dudley died October 18, 1917 and his death *ipso facto* created a vacancy in office. On July 4, 1917 the new salary act became effective. On December 19, 1917 the appellant was appointed to fill the vacancy caused by Judge Dudley's death. He was appointed by the governor of this state until the next general election and his certificate of appointment so read. He was then elected to fill out the remainder of the unexpired term of Judge Dudley which ended December 31, 1918.

The Constitution of Iowa provides that a district judge "shall be elected by the qualified electors of the district in which he resides" and that he "shall hold his office for the term of four years, and until his successor shall have been elected and qualified." Constitution Article 5 Section 5.

The Constitution of this state further provides that "the term of office of each judge shall commence on the first day of January next after his election," (Article 5 Section 11) and that he shall hold it "for the term of four years." Article 5 Section 5. These are mandatory provisions and the Constitution fixes both the initial and the terminal points of the office so created. The office of district judge is a constitutional office. The legislature cannot change it, nor can a court by judicial interpretation give it a meaning other than prescribed by the

fundamental law. There is but one term constitutional in character and that term is defined by the Constitution to be four years from a specified date. The Constitution intends and contemplates but *one term* regardless of the tenures of the various incumbents who might serve in the office during the prescribed term. A district judge has no successor within the term for which he is duly elected. His only successor within the constitutional meaning of the word *term* is the next incumbent chosen at the election by the people upon the termination of his constitutional term of four years for which he was elected. He may be his own successor.

The state Constitution does provide for the temporary filling of a vacancy by appointment or by election, but this does not constitute or create a new term in a legal or constitutional sense. A person so appointed or elected is a mere holder of a tenure within the term. The constitutional provisions have no relation to the particular person or persons who may perform the functions of a district judge within the term defined and prescribed by the Constitution. This is evident from the language of the Constitution which provides in case of "elections to fill vacancies in office occurring before the expiration of a full term, the person so elected shall hold for the *residue of the unexpired term;*" and those appointed to fill vacancies "shall hold until the next general election, and until their successors are elected and qualified." Constitution Article 11 Section 6.

Therefore whoever is appointed or elected is appointed or elected for an unexpired portion of a prescribed term. The term prescribed is a unit of time. A new term is not created. The appointee simply steps into the shoes, so to speak, of him who was elected for the constitutional term of four years and is entitled to perform the duties and receive the emoluments of the office until the end of that term or until a successor shall have been elected. The only *term* which is recognized by the Constitution is the term of four years. In popular language we speak of a "long term" and a "short term," but these words are not found in the Constitution, and although perhaps happily chosen to convey an idea, they have no constitutional meaning or definition.

The constitutional term of a district judge is a distinct thing or entity. An unexpired term can be predicated only on a pre-existent term of which it is a part. The *term* lives on even though the *incumbent* resigns, is impeached or dies. Personality has nothing to do with the question, nor is a term within the meaning of the Constitution "the period of a judge's service." It is axiomatic that the whole is equal to the sum of its parts and that the part is never equal to or greater than the whole. This is a postulate of logic as well as of mathematics.

The Constitution of this state originally fixed the compensation or salary of a district judge and it is specifically provided "which compensation shall not be increased or diminished during the term for which they shall have been elected." Article 5 Section 9. As indicated heretofore a judge of the district court is elected for the term of four years and until "his successor shall have been elected and qualified." This contemplates that a successor after the termination of the four years may not have been elected, or if elected, failed to qualify and in such event the judge in office remains as district judge, but his term has ended and he is then serving a part or portion of the subsequent term, and it is possible that he would serve an additional term of four years by reason of a failure in having a successor. In this event, however, he would have served two terms of four years each.

The case of *Schaffner v. Shaw*, 191 Iowa 1047 does not rule this case. It is based on an entirely different state of facts. The period of time or term in the *Schaffner* case had reference to a newly created judgeship, and it is said: "Such period was not the filling out of an unexpired term, and for this reason they [newly appointed judges] could not be within the rule of decisions declaring the term a unit, and holding that, where the incumbent resigns or dies, the appointee for the remainder of the term comes within the prohibition of any increase or diminution of salary."

Article 5 of the Constitution of Iowa is an exposition of the supreme law of this state with reference to the judicial department. It establishes the Supreme and district courts of this state, defines the jurisdiction of each court, and fixes the salary

of a judge of each court respectively. Clearly the framers of the original Constitution had in mind the *term* just established and defined therein.

* The fixing of the salary was contemporaneous with the fixing of the term, and having the four-year term in mind, it fixed the salary at a per annum compensation. This also conclusively shows that it was the office and not the incumbent that the framers had in mind. Canons of constitutional construction take into consideration contemporaneous events. When Section 9 was written the only question under consideration was salary. The term of judicial office had been settled. The framers and fathers of the Constitution in convention assembled had determined that "the Supreme Court shall consist of three judges" and after this point is settled they determined that "each" one of them shall have a salary of $2,000 per annum. The state had been divided into eleven judicial districts and each district necessarily had a district judge. It was then determined that "each" one of them shall be paid a salary of $1,600 per annum. This was in 1857 and the convention had in mind the salary and the number of district judges up to "the year 1860," and "after which time they shall severally" etc.

What is the antecedent of "they?" What does the word "severally" mean? With reference to what or to whom is the word "severally" used? Clearly the framers had in mind the two courts and the judges thereof. This is what they had just created. There were two classes of courts created and "they" meaning the two classes, were "severally," that is, *separately, distinctly,* after the year 1860, to "receive such compensation as the general assembly shall by law prescribe." The convention probably thought that economic and industrial conditions might change, that society would become more complex, that litigation would increase, that our population would grow, and with these things in mind it was deemed wise and expedient that the number of judges needed in either court or the salary they should be paid should be left to the wisdom of future legislatures. This convention was not providing in these particulars for vacancies in judicial office. There is not an intimation that

such contingency was within the purview of the framers when they wrote the sentences to which we now refer.

Giving the construction to the language contended for by appellant, we would have a "Meyer term," a "Wilson term," a "Hutchinson term," varying from one year to three years. Is a district judge elected by the people to serve until he might elect to voluntarily quit, or until he died within the term? If this is true then a fixed judicial term does not exist except by way of legal fiction.

May a district judge after his election and qualification fix his own term? Clearly not. There is but *one term* within the constitutional sense and that is for a period of four years. One term cannot follow another term through death or resignation of the first incumbent of the term. *One term* follows *another term* with far more certainty than day follows night in the division of time that marks the luminous line of demarcation.

No other construction is tenable, logical or within the meaning of our state Constitution. We cannot fritter away the Constitution by judicial interpretation. If any doubt exists it must be resolved in favor of the Constitution and the people who are governed thereunder. A judge does not have *a term* without reference to the language and the meaning of the language of the Constitution.

It is unnecessary to search for the purpose and the reason for the use of the language adopted by the makers of the original Constitution. The language carries its own intent. It may be that they had in mind that the fountain head of justice should not be polluted, and that the judicial branch and the legislative branch should be and remain distinct and that the influence of the judge in salary matters should not be brought to play on the members of our legislature.

The makers of the Constitution forbade a change of salary except at the end of four-year periods in order to maintain a capable, clean, and uncorrupted judiciary. It has been suggested, however, that it might prove a simple matter, if after judicial salary had been increased, for an incumbent to resign and be reappointed to fill the vacancy and thereby receive the increased emoluments if appellant's theory is correct. It will

not be presumed that a judicial officer could or would combine with legislators or executive and be willing to compass the rape of the Constitution in this manner. It is unnecessary for a court in determining the proposition involved to speculate on such contingencies.

It is quite generally held that a vacancy in office is within *the term* and not in *the office*. It is the *term* which survives. The Constitution of this state fixes that term, and its beginning and ending. This is an expressed definition of the word *term*, and no implied limitation can exist. Furthermore our statutes contain the same language and refer to a *full term* and *four-year term* and *fixed term*. Code Section 1069; Code Supplement Section 1060; Code Section 1265.

The time which a person holds over beyond his term of office is so much of an encroachment on the term of his successor. *State v. Galusha*, 74 Neb. 188 (104 N. W. 197); *State v. Breidenthal*, 55 Kan. 308 (40 Pac. 651); *In re Advisory Opinion*, 65 Fla. 434 (62 So. 363, 50 L. R. A. [N. S.] 365). The word *term* in a legal sense means the fixed and definite period of time which the law describes that an officer may hold office, and a holder over does not change the length of a term but results in shortening the period served by his successor. *State v. Tallman*, 25 Wash. 295 (64 Pac. 759). "The term of office is * * * four years. This, being a constitutional provision, is beyond legislative change. It is a fixed quantity." *State v. Thoman*, 10 Kan. 191 cited in *State v. Galusha*, 74 Neb. 188 (104 N. W. 197, at 202).

When a person is appointed to fill a vacancy for an unexpired term the unambiguous meaning is that he is to hold for the same term as the person whose place he takes. *Pruitt v. Squires*, 64 Kan. 855 (68 Pac. 643); *Ash v. McVey*, 85 Md. 119 (36 Atl. 440); *State v. Howell*, 59 Wash. 492 (110 Pac. 386, 50 L. R. A. [N. S.] 336 and note).

Under a Kentucky statute prohibiting a change of a county officer's salary during his term of office the Supreme Court held that "the appointee" had no term of office apart from the term of him for whose unexpired term he was appointed. *Bosworth v. Ellison* 148 Ky. 708. It would not seem that argument is

required to affirm that the reference to compensation which shall not be increased or diminished during *the term* for which the judge shall have been elected, as provided by our state Constitution, is a reference to *the term* and not to the occupant or incumbent. See *Foreman v. People,* 209 Ill. 567 (71 N. E. 35, 50 L. R. A. [N. S.] 35); *Harrison v. Colgan,* 148 Cal. 69; *Larew v. Newman* 81 Cal. 588 (23 Pac. 227) *Somers v. State* 5 S. D. 584; *Parmater v. State* 102 Ind. 90.

In the *Newman* case it was held that the person who is appointed to fill a vacancy in office, the salary of which was increased after the election of his predecessor but before the happening of the vacancy, is not entitled to an increase.

The decided cases are in apparent conflict, but in the attempt to reconcile them the language of the Constitution construed by the court in each case must be distinguished and differentiated. See *Carter v. State,* 77 Okla. 31 (186 Pac. 464); *Gaines v. Horrigan,* 72 Tenn. (4 Lea) 608; *Storke v. Goux,* 129 Cal. 526.

The case of *State v. Frear,* 138 Wis. 536 (120 N. W. 216) turns on the question whether the language of the Wisconsin Constitution increasing or decreasing any public officer's compensation "during *his* term of office" (Article 4 Section 26) has the same meaning as though it read "during *the* term for which they were severally elected." This is the recognized ambiguity, and in passing on cited cases in the light of the language of constitutions similar to Iowa it is said: "The petitioner cites *Barnum v. Gilman,* 27 Minn. 466 (8 N. W. 375, 38 Am. Rep. 304), as holding contrary to the foregoing, and that the words 'term of office for which he is elected,' in the Minnesota constitutional prohibition against a senator or representative holding any office under the authority of the United States or the state, with certain exceptions, 'during the term for which he was elected' mean during the term of his incumbency; that the term for which he was elected is synonymous with 'his term of office,' which means during his incumbency of the office; that during one full term of office there may be several successive incumbents, each having a fraction of a full term, and in that

situation have a term of office which as to him is his term of office.

That logic is diametrically opposed to the other cases cited, and would go far to sustain the petitioner's petition, if the court which adopted it had adhered to its decision. It had the support of a long line of opinions of the state's highest legal adviser, but when the court came to face the situation created by such decision, reinforced by such legal opinions, fifteen years later, it overruled it, adopting, without qualification, the same logic and arriving at the same conclusion as courts had before and have since, to which we have referred.''

In solving the problem presented it is further said: ''Its solution rests on the limitation of legislative power, disassociated entirely from the provision as to the office, term of office, and salary where the term doubtless is disassociated from the incumbent.'' Under the provisions of the Constitution of Iowa no such difficulty is presented, and it is strongly intimated by the Wisconsin court, if it were not for the ambiguity noted, the petitioner would have little, if any, ground to predicate his right of recovery.

*State v. Porter,* 57 Mont. 343 (188 Pac. 375) is in the same category as the Wisconsin case for the reason that the Constitution of Montana in relation to a public officer provides that ''No law shall * * * increase or diminish *his salary* or emolument after his election or appointment.'' The case at bar is not controlled by the interpretation of constitutions similar to Wisconsin and Montana.

The word *term* when applied to an office means the definite time as prescribed for its beginning and ending. Under the Constitution of Iowa the term does not revert to the people because the limitation exists. Under common law principles the *term* does not survive but it is said ''to revert to the people.'' The intent of the framers of our state Constitution is clearly to the contrary. Unexpired terms have no constitutional meaning. It is a legal misnomer. The duration of the judicial term being fixed, the vacancy is *in the term* as distinct from the office itself. The judicial term of four years as applied to district judges is a unit and is not susceptible of division into terms.

The appellant Wilson was simply supplying a vacancy in a term and is not entitled to more pay than Judge Dudley would have been legally entitled had Providence permitted him to serve his constitutional term of four years.

There is another provision of our state Constitution which constitutes a limitation upon judges, and it sheds some light on the proposition involved herein and sustains the view expressed. The same Article 5 Section 5 provides that the judge of the district court ''shall be ineligible to any other office, except that of judge of the Supreme Court, during the term for which he was elected.''

Our Constitution cannot be stretched until it cracks or be construed contrary to the intent of its language or its framers to meet any exigency. The judgment entered by the trial court is clearly correct and consistent with sound constitutional construction. Wherefore the judgment entered is—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.

PRESTON, J. (dissenting). There may be some repetition in my statement of the facts, and I may not state them in the same order as in the original opinion.

Plaintiff brings the action against defendant, as auditor of state, asking for a writ of mandamus directing defendant to issue a proper warrant for salary alleged by plaintiff to be due him, upon the basis of $4,000 per annum. The trial court dismissed the petition, and plaintiff appeals.

Judge Dudley was elected district judge in the fall of 1914, for the full term of four years, beginning January 1, 1915, as was also Judge McHenry. The salary of a district judge at that time was $3,500 per annum. The thirty-seventh general assembly increased the salaries of district judges to $4,000. That law took effect July 4, 1917, which was before either plaintiff or Judge Meyer was appointed, and before they began to serve as district judges. Judge Meyer has assigned his claim to this plaintiff. Judge Dudley died October 18, 1917, and the plaintiff, Wilson, was appointed by the governor to succeed him. He served as district judge under such appointment from December

19, 1917, to January 1, 1919. Judge McHenry resigned January 1, 1917, and Judge Hutchinson succeeded him by appointment. The latter resigned January 18, 1918. Judge Meyer was appointed by the governor, and served under such appointment from January 19, 1918, until November 5, 1918, when he was elected for the short term ending January 1st thereafter. Both Judge Wilson and Judge Meyer were elected for a full term, beginning January 1, 1919; but this is not involved in this controversy. The issue is whether plaintiff and Judge Meyer were entitled to a salary of $3,500 per annum, as fixed by Section 253, Code Supplement, 1913, or a salary of $4,000 per annum, as fixed by Chapter 235, Acts of the Thirty-seventh General Assembly, amending said section.

It is appellant's contention that the "term" of any incumbent of a judicial office, as that word is employed in Section 9 of Article 5 of the Constitution, means the period a judge is appointed or elected to serve. Appellee contends that, under the Constitution, the plaintiff and Judge Meyer may not receive the increased compensation prior to the expiration of the terms for which Judges Dudley and McHenry were elected,—that is, January 1, 1919. The Constitution fixes the salary of each judge of the Supreme Court and of each district judge until the year 1860, and provides further: "After which time they shall severally receive such compensation as the general assembly may, by law, prescribe; which compensation shall not be increased or diminished during the term for which they shall have been elected."

Plaintiff's service was under appointment only. Judge Meyer served under appointment to the time of the election in November, 1918, and thereafter under election for the short term.

Some of the cases hold that the words "elected" and "appointed" are not necessarily the equivalent of each other. Other cases hold that, under some circumstances, the words are synonymous. This court held, in *Schaffner v. Shaw,* 191 Iowa 1047, that the word "elected" in the Constitution is broad enough to cover an appointment, and to prohibit the general assembly from increasing or diminishing the salaries of Supreme

or district court judges during their terms, whether elected or appointed thereto.

The Constitution provides that the judge shall be elected by the qualified electors of the district in which he resides, and that he shall hold his office for the term of four years, and until his successor shall have been elected and qualified (Article 5, Section 5); and that the term of his office shall commence on the first day of January next after his election. Article 5, Section 11. It may be conceded, as contended by appellee, that Judges Dudley and McHenry entered upon a term, a constitutional term of four years, and that plaintiff and Judge Meyer were filling vacancies. It may be likewise conceded that the people cannot, at an election, confer the office of district judge originally for any shorter period of time than four years. It is true, as contended by appellee, that this section of the Constitution does not mention short term, unexpired term, vacancy, or appointed judges. Though vacancies and appointed judges are not mentioned, there would necessarily be vacancies by death or resignation, and appointments to fill such vacancies. This was, no doubt, in the minds of those who framed the Constitution. These matters are all referred to in Article 11, Section 6, of the Constitution, which provides that:

"In all cases of elections to fill vacancies in office occurring before the expiration of a full term, the person so elected shall hold for the residue of the unexpired term; and all persons appointed to fill vacancies in office shall hold until the next general election, and until their successors are elected and qualified."

It may be conceded, too, that, had Judges Dudley and McHenry served the full four years' term for which they had been elected, they would not have been entitled to an increase in salary during the four years, because the reason for the rule would apply to them while serving. Not so, however, after they were out of office. It does not follow, however, as we shall see later, that, one of them having died and the other having resigned, and being, therefore, incapable of drawing any salary, and not being in a position whereby their independence as judges might be affected, these plaintiffs, who were in such a position only after their appointment, may not be entitled to increased

compensation, when the salary was increased by the legislature before plaintiffs were in that position. The legislature could not increase or diminish the salary of plaintiff and Judge Meyer during the term or the time while they were occupying their positions after their appointment or election.

It is argued by appellee that the Constitution specifically establishes the court, and then proceeds to fix the salary of the judges, which was contemporaneous with fixing the term; that the convention, having determined the length of service to be given to a term, and having the four-year term in mind, fixed the salary at so much per annum; that the thing under consideration by the convention in framing Section 9 of Article 5 was nothing but the question of salary, because the term of judicial office had been settled. It is thought that this is proof that the word "term" refers all the time to the office, and not to the incumbent. Clearly, Judges Dudley and McHenry would have been entitled to the compensation fixed for their full four years' term, provided only that they served for the four years; and in that case the salary could·not be increased or diminished. Having served only a part of the four years' term to which they had been elected, they could not, of course, draw the salary for the full term, even though they had been elected for the four-year term fixed in the Constitution. Their term—that is, their term of service—expired before the end of the four years. Thereafter, their salary could not be raised or lowered, for the simple reason that, as to them, there was no salary. And though the salary is fixed at so much per annum, they would be entitled to the full compensation only for the time they served, the proportion served out of the four-year term for which they were elected,—at the rate of or on the basis of the per annum salary fixed. It is true, as contended by appellee, that the Constitution does not say that they should draw their salary at the rate fixed, but it seems to us that this is necessarily so. If they served six months, they would be entitled to one half the annual salary fixed. Clearly, then, it seems to me, the question of salary does not necessarily and in all cases apply to the full four-year term. Numerous cases are cited by both sides as to the meaning of the word "term," under other conditions and different statutes.

The question then is, In what sense was the word "term" used in the section of the Constitution now under consideration,— what was the intention,—when applied to a situation such as that now presented? As said, this section of the Constitution does not refer to vacancies or to judges appointed to fill vacancies. Yet such must have been considered. The framers of the Constitution could not have contemplated that judges appointed to fill vacancies should serve without any compensation during the term of their service or the time of their service, while they were serving as judges under appointment. In construing the word "term," consideration should be given to the other provisions in regard to increasing and diminishing salaries, and especially to the reasons for such a provision. The reasons for the restriction as to change of salary are the same where applied to those appointed or elected to fill an unexpired term as when applied to those who are elected, and serve the full four years. There is no reason for such a restriction during a period other than that of service by each particular judge. The reasons could not apply to Judge McHenry, after his resignation, nor, of course, to Judge Dudley after his death. As to plaintiff and Judge Meyer, the law increasing the salary had been passed and was in force before either of them was occupying the position of district judge. The reason for the rule is quite generally, if not universally, stated to be the purpose to secure, as far as possible, the removal from the lawmakers of the temptation to control the other branches of government by promises of reward in the form of increased compensation, or threats of punishment by way of reduced salaries. The legislature may not reward a court for upholding a statute passed, or punish for declaring it invalid. A further reason is to relieve the lawmaking branch from possible importunities by judges and other officeholders, by reason of their position, seeking increased compensation for themselves. In short, the purpose, and the sole purpose, of this provision is to secure, as far as possible, the independence of each co-ordinate branch of government, and to remove from the sphere of temptation every public officer whose office is created by the Constitution, and whose conduct might be influenced by the hope of reward or

the fear of punishment. So far as there is reason for the rule which underlies the limitation, it must be enforced; but when the reason for the rule ceases, so does the rule itself. *State v. Porter,* 57 Mont. 343 (188 Pac. 375). Here, plaintiff and Judge Meyer were not in a position to influence or be influenced by the legislature. The salary had already been raised before they were appointed judges. When the bill to increase the salary of district judges was before the legislature, it was impossible that they could have known that Judge Dudley thereafter, and in October, 1917, would die, and that plaintiff would be appointed in his place, or that Judge Meyer would be appointed in January, 1918, after the resignations of his predecessors.

Section 1060 of the Code provides that the term of an officer chosen to fill a vacancy shall commence as soon as he has qualified. Section 9 of Article 5 of the Constitution, under consideration, fixes the salary of each judge until 1860. The clause following reads that, after that date, the judges ''shall severally receive such compensation as the general assembly may, by law, prescribe; which compensation shall not be increased or diminished during the term for which they shall have been elected.'' The word ''severally,'' we think, includes all the judges; but they are treated severally, and regardless of how any attained the office; and their compensation is not to be changed during the term for which ''they,'' the several judges, shall have been elected,—that is, chosen or appointed, as held in the *Schaffner* case. The word ''they,'' means, we think, all the several judges for whom compensation is prescribed, some of whom have been elected, and serve the full term, others of whom have been elected for a short or unexpired term, and still others appointed. If this is so, and we think it is, the word ''term'' refers to the period for which each of the judges is chosen or selected, and which he serves.

Concededly, the cases are in conflict. Among the cases cited by appellee are *Foreman v. People,* 209 Ill. 567 (71 N. E. 35); *Harrison v. Colgan,* 148 Cal. 69 (82 Pac. 674). These seem to be the only ones directly in point. These two cases hold as contended by appellee. But a reading of those cases shows that the question as to the reason and purpose of the constitu-

tional restriction was not considered or discussed. On the other hand, the following cases sustain appellant's contention: *State v. Porter*, 57 Mont. 343 (188 Pac. 375); *Carter v. State*, 77 Okla. 31 (186 Pac. 464); *Board v. Lee*, 76 N. J. L. 327 (70 Atl. 925); *State v. Frear*, 138 Wis. 536 (120 N. W. 216, 16 Ann. Cas. 1019); *Gaines v. Horrigan*, 72 Tenn. (4 Lea) 608. These cases do consider the reason for the rule. We shall not take the time to discuss each one at any length. In Oklahoma, the constitutional provision is that the salary of any public official should not "be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment." The court, in the case cited, held that:

"The law fixing the salary of the relator was enacted prior to his appointment. His term of office began with his qualification, and may be terminated by resignation, death, removal for cause, or the expiration of the time of the unexpired term for which he was appointed. A law attempting to change his salary, subsequent to his appointment and qualification, and before the termination of his present term, would fall within the terms of the section of the Constitution; but when enacted prior to his appointment, and prior to his term, is not within the constitutional inhibition."

The Tennessee Constitution provides that the compensation shall not be increased or diminished during the time for which officers are elected. The word "time" is used, instead of "term." The decision was made to rest in part thereon. The court held, in the cited case, that:

"Looking to the reasons upon which this clause of the Constitution was doubtless adopted, it must be apparent that the object was to prevent the increase or diminishing of a judge's salary *while he is in office,* so as to relieve him, as far as possible, from improper influences, and promote an independent discharge of his duties. If the change takes place before the judge is elected or appointed, the evils intended to be guarded against cannot well result as to him. He accepts the office with a knowledge of the salary as fixed, and no injustice is done him."

In the New Jersey case, it was said that the "words, 'term

of office' may, in a sense, be used to indicate the statutory period for which an officer is elected. * * * But the words 'term of office' may. also mean a period much shorter than that for which the particular officer was elected. His term of office may be terminated before the expiration of the statutory period for which he was elected, by impeachment or resignation or death of the particular officer. The happening of these contingencies are implied limitations upon the right of the elected officer to continue in office for the period for which he would otherwise be entitled to hold. When such a contingency occurs, the officer's term expires; there is a vacancy; and, upon the appointment or election to fill the vacant office, the term of another officer begins. To assert that a term of office of an impeached or deceased officer continues, is to assert that there may be two terms of office running together, although the office can be filled by only a single person.''

In the Wisconsin case, the language of the Constitution was:

''Nor shall the compensation of any public officer be increased or diminished during his term of office.''

The personal element was referred to, and one of the judges said, in the concurring opinion, that he regarded the provision as personal to the incumbent of the office. It was held that, as to the particular incumbent's term of service, during its pendency, the legislature is under complete disability to change the salary incident, in any manner or to any extent; but that, as to any period within the whole term filled by an appointment or election, the legislature has power, before the commencement thereof, to fix a compensation different from that incident to the office during the preceding period. The concurring opinion states that, if the incumbent enters the office after the change of salary has taken place, he is entitled to that salary, and as to him it cannot be increased or diminished; but if the office is vacated by death, or otherwise, before the expiration of the term, the succeeding incumbent takes the office with the salary fixed by the legislature for that office, and in force at the time of appointment or election of the succeeding incumbent, even though such appointment or election be for part of an unexpired term.

The precise question here presented was not in the *Schaffner* case, but some of the language in Division IV of the opinion has a bearing upon the question in this case. Inequality in the matter of compensation of judges exercising the same jurisdiction has been condemned. 15 Ruling Case Law 525, Note 12. There is no reason to suppose that the constitutional convention intended that the district judges should not receive the same compensation, or that one appointed to fill a vacancy should receive less than one elected; and there is no reason why they should, unless the compensation is changed during the term of service of an incumbent. Deaths, resignations, removals, and appointments to fill vacancies must have been considered. The Constitution was adopted many years ago, and the salary as fixed in the Constitution was very low. Increase of salaries was no doubt contemplated, and reductions also, if, perchance, the salaries should ever be too high. I think that the word "term," as applied to the situation in this case, means the term of service. I would reverse, and grant the writ of mandamus, and direct the defendant to issue a proper warrant upon the basis of $4,000 per year, as prayed.

WEAVER and EVANS, JJ., concur in this dissent.