[Civil No. 4088. Filed March 27, 1939.]

[88 Pac. (2d) 542.]

JOHN P. CLARK, Petitioner, v. ANA FROHMIL-LER, as Auditor of the State of Arizona, Respondent.

Mr. P. H. Brooks, for Petitioner.

Mr. Joe Conway, Attorney General and Mr. Lin Orme, Jr., his Assistant, for Respondent.

LOCKWOOD, J.—This is an original proceeding by John P. Clark, hereinafter called petitioner, against Ana Frohmiller, as auditor of the state of Arizona, hereinafter called respondent, requesting a writ of *mandamus* ordering her to draw her warrant upon the state treasurer for the sum of $550.53 for salary which petitioner claims is due him from the state as judge of the superior court of Navajo county.

The facts necessary for a decision of the case are not in dispute and may be stated as follows:

The superior court of Navajo county was one of the superior courts established at statehood under article 6, section 5, of the Constitution of Arizona. By virtue of said section the first term of office of the judge of that court expired the first Monday in January, 1915, and from and after that time the terms were governed by the following language of section 5, *supra*:

" . . . Thereafter the term of office of all judges of the superior court shall be four years, from and after the first Monday in January next succeeding their election and until their successors are elected and qualify."

Honorable PAUL A. SAWYER was elected judge of the superior court of Navajo county at the general election in 1934, and entered upon the discharge of the duties thereof on the first Monday in January, 1935, the term of office for which he was elected expiring the first Monday in January, 1939. Judge SAWYER died during the month of December, 1935, and petitioner herein was appointed to fill the vacancy. This appointment was made under the following provision of section 5, *supra*:

"If a vacancy occur in the office of judge of the superior court, the Governor shall appoint a person to fill the vacancy until the election and qualification of a judge to hold said office, which election shall be at the next succeeding general election, and the judge so elected shall hold office for the remainder of the unexpired term."

In pursuance of such provision, petitioner was chosen at the next general election, which was held in November, 1936, to "hold office for the remainder of the unexpired term" of Judge SAWYER. At the time Judge SAWYER took office in January, 1935, up to December 2, 1936, the salary of the judge of the

superior court of Navajo county was fixed by law at $3,200 per year. On the date last named, and before petitioner filed an oath of office and entered upon the discharge of his duties as the result of his election in November, 1936, the legislature fixed the salary at $3,500 per year.

It is the contention of petitioner that on this state of facts, from and after the first Monday in January, 1937, he was entitled to be paid at the rate of $3,500 per year as fixed by the act of December 2, 1936, rather than at the rate of $3,200 per year as fixed by the law in effect when Judge SAWYER took office in January, 1935, and it is this question which is before us for consideration.

The answer is necessarily determined by the interpretation of section 17, part 2, article 4 of the Constitution of Arizona, as amended at the general election in 1930 (Chap. 71, Laws 1929), which reads as follows:

"The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office, provided, however, that when any legislative increase or decrease in compensation of the members of any court, board or commission, composed of two or more officers or persons, whose respective terms of office are not coterminous, has heretofore or shall hereafter become effective as to any member of such court, board, or commission, it shall be effective from such date as to each of the members thereof."

The particular portion of the constitutional provision which applies to the case at bar is the following:

" . . . nor shall the compensation of any public officer be increased or diminished during his term of office, . . . "

It is the contention of petitioner that his "term of office," for which he claims the larger salary, did not begin until the first Monday in January, 1937, and that since the increase in the salary took effect on December 2, 1936, before his term of office began, he is, therefore, entitled to the increased salary.

It is the position of respondent that the "term of office" which petitioner was serving after the first Monday in January, 1937, began on the first Monday in January, 1935, and expired on the first Monday in January, 1939, regardless of who was the incumbent at any particular time during that term of office, or how many there might have been during said term.

A similar question has arisen in many states and the decisions of the courts thereon are not in harmony. The leading case supporting petitioner's contention is that of *State* v. *Frear*, 138 Wis. 536, 120 N. W. 216, 16 Ann. Cas. 1019. The court, after a careful and elaborate discussion, held that while, generally speaking, constitutional provisions of the nature of the one involved herein referred to the full term fixed by the fundamental law of the state and that a person appointed or elected to fill a vacancy did not have a term of office in the constitutional sense, but merely stepped into the place and shoes of his predecessor and became subject to the incidents of that term so far as the salary is concerned, yet since the construction given the constitutional provision of Wisconsin by the administrative officers of the state for a period of over fifty years had been that such provision applied only to the individual officer for the length of time which he held office, and not to the full term for which the office itself was established, an officer appointed or elected to fill a vacancy was entitled to receive the salary which was in force at the time of his personal elec-

290

tion or appointment, and not at the beginning of the full term fixed by the Constitution. In other words, the court apparently said, in substance, that it would follow the long existing administrative practice of the state rather than the natural and logical construction of the Constitution. This case was followed in *Carter* v. *State,* 77 Okl. 31, 186 Pac. 464, without any discussion of its reasoning. A similar result was reached in the early case of *Gaines* v. *Horrigan,* 4 Lea (Tenn.), 608, but in that case the constitutional provision was that the judges should receive a compensation "which shall not be increased or diminished during the time for which they are elected", and under such a provision it was held that the word "time" did not mean "term" and, therefore, the salary of each judge was fixed by the law in force at the particular time for which he was elected, regardless of whether he were chosen to fill a vacancy in the term or not.

The Supreme Court of New Jersey, in *Board of Chosen Freeholders* v. *Lee,* 76 N. J. L. 327, 70 Atl. 925, construed the words "term of office" as referring to the time for which the particular incumbent held the office, regardless of whether it were a full constitutional term or not, and reached the same result as that arrived at in the cases just above cited.

The leading case taking the contrary view is that of *Larew* v. *Newman,* 81 Cal. 588, 23 Pac. 227. The California constitutional provision, article 11, section 9, was:

" . . . the compensation of any . . . county . . . officer shall not be increased after his election or during his term of office."

Section 1004 of the Political Code of California, which is practically identical with our section 96, Revised Code 1928, at that time provided:

" . . . any person elected or appointed to fill a vacancy, after filing his official oath and bond, possesses all the rights and powers and is subject to all the liabilities, duties, and obligations of the officer whose vacancy he fills."

The court held that one appointed to fill a vacancy in an existing term was bound by the salary as it existed at the beginning of the full regular term. In the case of *Storke* v. *Goux,* 129 Cal. 526, 62 Pac. 68, the court reviewed its decision in *Larew* v. *Newman, supra,* and stated "We are satisfied not only of the wisdom, but of the soundness, of the interpretation which it has given to the law" and reaffirmed the case.

The same question arose in Michigan, and the Supreme Court of that state reached the same conclusion as did the California court, in the case of *Kearney* v. *Board of State Auditors,* 189 Mich. 666, 155 N. W. 510, 512. The facts in that case showed the dangerous situation that might arise in any state if the interpretation contended for by petitioner were adopted. The officers in question had been chosen for a six-year term and the salary payable for such office was raised during their term. The officers resigned, and were immediately reappointed by the Governor, and then contended they were entitled to the increased compensation. The court said:

" . . . While the word 'term' applies to the office, rather than the person holding it, after his election or appointment the right of tenure for the term attaches to him, and in common thought and parlance the office and term together become an attribute of and characterize the incumbent during the time for which he is entitled to the office. To hold that he may acquire added rights by simply withdrawing from and again resuming his incumbency for that term, through whatever agency, is subversive of the spirit, if not the letter, of this constitutional provision and contrary to the fundamental principles of public policy under-

lying constitutional and statutory restrictions of this character.''

A similar contention was disposed of adversely to the position of petitioner in *Foreman* v. *People,* 209 Ill. 567, 71 N. E. 35, 37, and the court used the following language:

'' . . . To say that the provision relates to the continuance in office of an individual and not a term of office would prevent the increase of salary of a judge upon his re-election, since in that case he would continue in the same office as judge, holding under one election until he began his term of office under the next, with no interval. In such a case there could be no change that would not be during his continuance in office. As we understand counsel for appellee, he contends that the provision refers to the individual for one purpose, and to the term for another, so as to permit an increase on the beginning of a new term. In our opinion, the provisions all relate to the official term, and were intended to make each department of the government independent of the other — the executive and judiciary independent of the Legislature because the Legislature cannot diminish their salaries during the official terms, and the Legislature independent of the executive and judiciary by freeing them from importunities to increase salaries.''

In *Wilson* v. *Shaw,* 194 Iowa 28, 188 N. W. 940, 941, discussing a similar proposition, the court said:

''There is but one term constitutional in character, and that term is defined by the Constitution to be four years from a specified date. The Constitution intends and contemplates but one term, regardless of the tenures of the various incumbents who might serve in the office during the prescribed term. A district judge has no successor within the term for which he is duly elected. His only successor within the constitutional meaning of the word 'term' is the next incumbent chosen at the election by the people upon the termination of his constitutional term of four years for which he was elected. . . .

" . . . Therefore whoever is appointed or elected is appointed or elected for an unexpired portion of a prescribed term. The term prescribed is a unit of time. A new term is not created. The appointee simply steps into the shoes, so to speak, of him who was elected for the constitutional term of four years, and is entitled to perform the duties and receive the emoluments of the office until the end of that term, or until a successor shall have been elected. The only term which is recognized by the Constitution is the term of four years. In popular language we speak of a 'long term' and a 'short term,' but these words are not found in the Constitution, and, although perhaps happily chosen to convey an idea, they have no constitutional meaning or definition.

"The constitutional term of a district judge is a distinct thing or entity. An unexpired term can be predicated only on a pre-existent term of which it is a part. The term lives on even though the incumbent resigns, is impeached, or dies. Personality has nothing to do with the question, nor is a term within the meaning of the Constitution 'the period of a judge's service.' It is axiomatic that the whole is equal to the sum of its parts, and that the part is never equal to or greater than the whole. This is a postulate of logic as well as of mathematics."

Following this definition of the words "term of office," the court held that an appointee to fill an unexpired term was bound by the salary as it existed at the beginning of the term of office, saying:

"The appellant, Wilson, was simply supplying a vacancy in a term, and is not entitled to more pay than Judge DUDLEY would have been legally entitled had Providence permitted him to serve his constitutional term of four years."

Again in *Bosworth* v. *Ellison,* 148 Ky. 708, 147 S. W. 400, 402, the court held that an appointee to hold a vacancy drew the salary in effect at the beginning of the term which he was appointed to fill, saying:

" . . . A term of office, when the period of the term is fixed by Constitution or statute, means the period designated by the Constitution or statute. There should be a certainty and a fixedness about the words 'his term of office.' They were not intended to depend on the mere accident of appointment or election to fill a vacancy for a month or a year. When a person is appointed or elected to fill a vacancy in a term, he merely fills out the term of his predecessor. He does not enter on a new term of office, as does a person who is elected or appointed and takes the office at the beginning of the term as fixed by law. Within the meaning of section 161 of the Constitution, Ellison occupied precisely the same position that Morgan would, if he had not resigned. [Citing cases.]"

A similar result was reached by the Supreme Court of Washington in *State* v. *Clausen,* 117 Wash. 475, 201 Pac. 770.

It will thus be seen that the weight of authority, and we think the most persuasive logic, when applied to our constitutional provision, is opposed to the contention of petitioner, and we are satisfied that as a matter of public policy it is the proper conclusion. The rule laid down by the majority of cases is sound and its construction, simple and uniform in its application, and works no undue hardship on any incumbent of an office. All persons who aspire to a constitutional office know that the regular term fixed by the Constitution began the first Monday in January after the first general election following the creation of the office, in the manner provided by the Constitution, and begins anew at regular fixed intervals indefinitely. They, therefore, know that salary changes can take effect only before the beginning of such intervals. Any other construction of the phrase "term of office" would mean that there might be "terms of office" of anything from one day to four years in any particular county for individual judges of the superior court,

depending on how and when such individual entered on his duties, instead of definite four-year terms of office as provided by the Constitution, regardless of how many individuals should from time to time fill these terms. Such a construction would violate both the letter and spirit of our Constitution.

For the foregoing reasons, the general demurrer of the respondent, on the ground that the petition fails to state facts sufficient to constitute a cause of action or to warrant any relief to petitioner, is sustained.

ROSS, C. J., and McALISTER, J., concur.