COMPTROLLER OF THE STATE OF MARYLAND
*v.* KLEIN

[No. 89, September Term, 1957.]

428

■■■■■■■■■■■■■■■■

*Decided January 30, 1958.*

■■■■■■■■■■■■■■■■

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT and HORNEY, JJ., and GRAY, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Joseph S. Kaufman, Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellant.

*Charles C. G. Evans* and *W. Giles Parker,* with whom was *Robert F. Skutch, Jr.,* on the brief, for the appellee.

GRAY, J., by special assignment, delivered the opinion of the Court.

This appeal presents for consideration the construction of Article 3, Section 35, of the Constitution of Maryland. It involves the right of a public officer, who was appointed to fill out an unexpired term, to receive an increase in the salary of that office provided for after the appointment of his predecessor but before the present incumbent was appointed. While this Section of the Constitution has heretofore received interpretation by this Court,[1] the specific question now presented comes for determination for the first time.

The facts are simple and undisputed. On June 1, 1949,

---

1. *Calvert County v. Monnett,* 164 Md. 101; *State v. Dashiell,* 195 Md. 677; *Bowman v. Harford County,* 166 Md. 296; *Anne Arundel County v. Goodman,* 172 Md. 559; *Pressman v. D'Alesandro,* 211 Md. 50.

Mr. William Mahaney was appointed Chairman of the Employment Security Board for a six-year term expiring on June 1, 1955. At that time his salary was fixed at $7,500. Thereafter, by Chapter 617 of the Acts of 1951, the power to fix the salary of the Chairman was vested in the Standard Salary Board. In June, 1951, this Board fixed the salary of the Chairman at $10,000. However, Mr. Mahaney continued to receive his original salary until his resignation on July 20, 1953. After Mr. Mahaney resigned, the Governor appointed Daniel E. Klein, the appellee, to fill the remainder of Mr. Mahaney's unexpired six-year term, effective on or about November 2, 1953. Thereafter and until his resignation on April 15, 1955, the appellee received as his salary $10,000 per annum, which included the increase of June, 1951. During the course of a routine audit of the fiscal affairs of the Employment Security Board, the propriety of paying the appellee the increased salary was raised. In due course, the Comptroller of the State of Maryland called upon the appellee to return the funds paid to him by way of salary in excess of the rate of $7,500, which was the salary established by law when his predecessor, Mr. Mahaney, was originally appointed for the six-year term. Thereupon the appellee brought suit in the Circuit Court of Baltimore City, seeking a declaratory decree establishing his right to the funds in question. These proceedings resulted in a decree of that Court establishing the right of the appellee to the full salary actually received by him. From this decree, the Comptroller has taken the present appeal.

Some collateral issues were originally raised in the *nisi prius* court, but they seem to have been abandoned there and were not argued or otherwise urged in this Court. Counsel for both sides concede that the sole question for determination in this appeal is whether or not the appellee, while serving the unexpired term to which Mr. Mahaney had been originally appointed, was prohibited from accepting the increase in salary by the concluding clause of Section 35, Article 3, of the Constitution. The relevant clause reads: "nor shall the salary or compensation of any public officer be increased or diminished during his term of office." The appellant con-

tends that this clause should be interpreted as though it read: "Nor shall the salary or compensation with respect to any public office be increased or diminished during any term thereof." The appellee contends that the clause should be construed as though it read as follows: "Nor shall the salary or compensation of any public officer be increased or diminished during his term of office, while he shall be an incumbent thereof."

It is apparent that the question raised for determination is a narrow one, but it has given rise to a wide difference of opinion and is not free from difficulty. Contrary interpretations have been reached by different attorneys general.[2] In the pending case the full salary was first paid to the appellee, and now the State demands a refund of the increase. An examination of the authorities in other states discloses a wide difference of opinion among them. Some of this difference stems from the fact that most of the State Constitutions contain a clause prohibiting certain increases or decreases of compensation, or both, but the phraseology in the several instruments is quite different. Some of the decisions adopt a construction which the Court concerned deems to effectuate the general object of the prohibition while others result from a study and application of the phrase involved. Generally, the decisions fall into two categories: (a) Those which hold that the prohibition relates to the *term* and therefore prevents any person serving during that term, whether an original incumbent or one filling an unexpired term, from receiving an increase or being subjected to a decrease in compensation; and (b) Those which hold that the prohibition is intended to relate to the individual who may for the time being hold the particular office. This group of cases generally holds that the prohibition affects only the incumbent who may occupy the office at the time of the increase or diminution.

The appellant relies upon *Wyrick v. Ritzville,* 16 Wash. 2d 36, 132 P. 2d 737, 144 A. L. R. 681, which relates to

---

2. 24 Opinions of the Attorney General 431; 34 Opinions of the Attorney General 123; 40 Opinions of the Attorney General 171.

municipal officials, one of whom sought a per diem which had been authorized before he accepted appointment to an unexpired term. As pointed out by the appellant, Article II, Section 25 of the Washington Constitution is substantially identical with Article III, Section 35 of the Maryland Constitution. However, the Court appears to have applied Article XI, Section 8 of the Washington Constitution which provided that, "The salary of any county, city, town or municipal officers shall not be increased or decreased after his election or during his term of office * * *." This provision of the Washington Constitution is materially different from ours. In view of this difference and of the reasoning of the Court we do not regard the precedent as persuasive. Somewhat similar decisions were rendered in the following cases: *Bosworth v. Ellison,* 148 Ky. 708 (1912), 147 S. W. 400. (This case had to do with an increase of a jailer's compensation for keeping and feeding prisoners, and the Court reached a conclusion contrary to that of this Court in *Bowman v. Harford County,* 166 Md. 296.) *Clark v. Frohmiller,* 53 Ariz. 286 (1939), 88 P. 2d 542, involves the right of a judge elected to fill an unexpired term to an increase provided before his election. The constitutional limitation is not dissimilar to ours. The Court reviewed various decisions on both sides of the question and held that the increase was prohibited. In *Foreman v. People,* 209 Ill. 567 (1904), 71 N. E. 35, the Court construed three quite different constitutional provisions to mean the same thing and that all prohibit any increase during the *term.*

In *Wilson v. Shaw,* 194 Iowa 28 (1922), 188 N. W. 940, the Court was dealing with a constitutional limitation affecting compensation "during the term for which he shall have been elected." By a divided Court, increased compensation to one filling an unexpired term was denied.

The case of *State v. Yelle,* 12 Wash. 2d 434 (1942), 121 P. 2d 948, cited by the appellant, is not in point, for it has to do with the question of whether an incumbent, re-elected for a new term, may be subjected to a decrease effected before his re-election; but see *State v. Clausen,* 117 Wash. 475

(1921), 201 P. 770; *Holmes v. Frohmiller,* 55 Ariz. 556 (1940), 104 P. 2d 156.

The following cases tend to support the contention of the appellee:

*Gaines v. Horrigan,* 72 Tenn. (4 Lea) 608. In this case the constitutional limitation was "during the time for which they are elected." In a well considered opinion the Court held that a decrease before Horrigan assumed an unexpired term was effective.

*Lancaster v. Board,* 115 Colo. 261 (1946), 171 P. 2d 987, dealt with a constitutional limitation prohibiting increase or decrease "after his election or appointment." The Court held that an increase authorized before the incumbent was appointed to fill an unexpired term was payable.

*State v. Frear,* 138 Wis. 536 (1909), 120 N. W. 216. In Wisconsin's Constitution there was a limitation on the power of the legislature to increase or decrease any public officer's compensation "during his term of office." One appointed to fill a vacancy was held entitled to an increase. The Court based its reasoning largely on the fact that the limitation was on the legislature (as in Maryland) and related to the incumbent rather than the term.

To the same effect, see: *Freeholders of Atlantic County v. Lee,* 76 N. J. L. 327 (1908), 70 A. 925; *State v. Porter,* 57 Mont. 343 (1920), 188 P. 375 (but see *State v. Knight,* 76 Mont. 71 (1926), 245 P. 267); *Ballangee v. Board of County Com'rs,* 66 Wyo. 390 (1949), 212 P. 2d 71; *Carter v. State,* 77 Okla. 31 (1919), 186 P. 464.

Many of these decided cases deal with phraseology substantially different from that of our Constitution. It is quite impossible to reconcile the reasoning or the results in all of the cases that deal with this subject and there seems to be no clear weight of authority. The Court concludes that its determination should not be based upon an attempt to determine the weight of the authority in the cases thus decided. We prefer to predicate the decision in this case upon what we conceive to be the natural and logical interpretation of the words of the Constitution, an evaluation of the purposes of the framers of the Constitution in establishing this pro-

hibition and consideration of other Maryland cases which deal with somewhat analogous problems.

The entire section in question reads as follows:

"No extra compensation shall be granted or allowed by the General Assembly to any public Officer, Agent, Servant or Contractor, after the service shall have been rendered, or the contract entered into; nor shall the salary or compensation of any public officer be increased or diminished during his term of office."

Stripped of its non-essentials, so far as this case is concerned, the concluding clause reads: "Nor shall the salary * * * of any public officer be increased * * * during his term of office." Had the Founding Fathers intended the construction contended for by the appellant, it seems likely that they would have used some such phrase as "Nor shall the salary with respect to any office be increased during any term thereof." We agree that the phrase "term of office" must be given effect, but we conclude that it does not necessarily mean the entire term as fixed by statute or by the Constitution. The possessive pronoun "his" is used and its antecedent is clearly the noun "public officer". To what public officer does this pronoun refer? It seems obvious that it refers to the public officer whose salary is being considered for increase or decrease or in whose incumbency the change occurs. The pronoun "his" must be given just as great weight as the word "term". Both words must have effect in determining the meaning of the clause. While the entire term may be identified as Mahaney's term after his resignation, in the sense that it is identified with him as the original incumbent, it no longer belongs to him and cannot be truly said to be *his* term. The phrase means the incumbent in the office at the time the legislature or other appropriate agency acts upon the proposal to increase or decrease the emoluments of that particular office.

This construction of the clause is supported by the entire sentence constituting Section 35. The first clause has to do with prohibiting extra compensation to any public officer,

agent, servant, or contractor after the service shall have been rendered or the contract entered into. This clearly deals with an individual officer, agent, servant, or contractor and does not affect any other public office or any other incumbent. This tends to show that the purpose of the entire sentence was to deal with the individual who held the office at the time the question arose. Suppose the State had a firm contract with the ABC Corporation to do certain work for a specific price. This provision would clearly prohibit any extra compensation to that company, but if the ABC Corporation failed to perform its contract—for instance, failed to execute a completion bond as the contract required—this section would not prohibit the State from awarding the same job to the XYZ Corporation at a higher figure. It seems clear that the initial clause of this sentence related to the individual with whom the State is dealing, and it seems logical that the same interpretation should be given to the second clause and its applicability be limited to the individual directly concerned.

The view just expressed is, we think, strengthened by the basic reason for the Section. This Section was obviously designed by the first clause to prevent pressure upon the General Assembly to award "extra compensation" to any public officer or contractor. See *State v. Dashiell*, 195 Md. 677, 693. The second clause was intended to prevent a public officer from using his office for the purpose of putting pressure upon the General Assembly or other authorized agency to award him additional compensation and, on the other hand, to prevent the General Assembly or other agency from putting pressure on a public officer by offering him increased compensation or threatening a decrease thereof. See Vol. 2, Debates of Constitutional Convention (1864), p. 802 et seq. In all of these situations the evil sought to be avoided is applicable only with respect to the incumbent then in office. In this case, Mr. Klein could not have used an office which he did not occupy until two years later to pressure the Salary Board for the increased pay, nor could the Salary Board affect Klein's performance of his duties when he did take office by providing an increase during the term of his predecessor. There is no more reason for making this Section of

the Constitution applicable to one who fills out an unexpired term than to make it applicable to a holder of the same office under a new term. It seems perfectly clear that the prohibition would not be applicable to a succeeding term, even though the incumbent was the same individual who held office during the prior term when the change in compensation was effected. We are not impressed with the argument of the Attorney General that if this Section be held to apply to the incumbent of the office rather than to the office itself an incumbent could never receive an increase in pay even during succeeding terms. This reasoning was used by the Court of Illinois in the case of *Foreman v. People, supra,* but this Court does not concur. Moreover, it seems unlikely that the framers of the Constitution intended to handicap the State or its political subdivisions from offering what might well be a necessary inducement to get a qualified man to fill a vacancy. Many terms extend for six years and in that period changes in the economics involved, in the character of the duties to be performed, or in the urgency of some important program might well justify a change in the salary to be offered a person in order to induce him to fill an unexpired term. This Court had before it a somewhat similar problem of construction in *Hillman v. Boone,* 190 Md. 606. In that case there had been a series of vacancies in the office of Judge in the Fifth Judicial Circuit. Judge Melvin died on December 14, 1945. Judge McWilliams was appointed as his successor and resigned on March 1, 1948. Judge Anderson was appointed as his successor. The appellant in that case filed as candidate for Judge in the primary elections of May 8, 1948, and sought a mandamus to require that his name be placed on the ballot. He contended that the vacancy must be filled at the first election occurring one year after the appointment of the successor to Judge Melvin, whose death created the first vacancy. The relevant provision of the Constitution is that a Judge shall hold office "until the election and qualification of his successor * * *. His successor shall be elected at * * * the first such general election after one year after the occurrence of the vacancy * * *." This contention was rejected by this Court. Judge Markell, speaking for the

Court, said (at page 609): "We think this contention is contrary to the plain meaning of the words, and the evident purpose, of the 1944 amendment." We then concluded that the pronoun *"his"* controlled and related to the then incumbent of the office.

The appellant urges as one of the reasons to hold that the framers of the Constitution contemplated that the Section in question related to the office rather than to the individual incumbent is that to hold otherwise would admit of an interpretation which would do violence to the spirit of the Section by permitting an incumbent to resign and be reappointed by the appropriate authority, so that he could benefit from an increase theretofore authorized. It is unnecessary for the Court to determine in this case whether the Constitution could be thus circumvented. See *Kearney v. Board of State Auditors,* 189 Mich. 666 (1915), 155 N. W. 510, and *Smith v. City of Waterbury,* 54 Conn. 174, 7 A. 17.

It is also suggested that even if this device were unavailable, the purpose of the Constitution could be defeated by the appointing authority permitting two officers to resign their respective posts and then reappointing each of them to the other's former job. The Court cannot assume that any appointing authority in the executive department of the State or of its political subdivisions would be a party to a subterfuge. The possibility of improper conduct on the part of public officials does not warrant us in adopting a construction of the Constitution not justified by its plain language. The people of the State are not without means to deal with those who violate the spirit of our institutions.

It is also suggested that to permit an incumbent appointed to fill a vacancy to receive a greater salary than his associates, who may not receive an increase during their respective terms, would produce an incongruous result which the framers of the Constitution could not have intended. However, this is a result which is implicit in any situation where the members of a board or commission have staggered terms and a salary increase occurs.

The decree will be affirmed.

*Decree affirmed, with costs.*

HORNEY, J., filed the following dissenting opinion, in which Prescott, J., concurred.

The majority opinion of this Court, affirming the decree of the lower court, is based on an interpretation of the meaning of the clause: "* * * nor shall the salary or compensation of any public officer be increased or diminished during his term of office," as used in Section 35 of Article III of the Constitution of Maryland. The effect of the decision is to hold that the constitutional limitation relates to the *incumbent* of the office rather than to the *term* thereof.

The lower court decreed that Daniel E. Klein, (the public officer), had the right to receive a salary at the rate of $10,000 per annum for the period from November 1, 1953, to April 4, 1955, during which he served as chairman of the Employment Security Board. The annual salary of the public officer, who was filling the unexpired portion of the six-year term of his predecessor, had been increased from $7,500 to $10,000 during the incumbency of the predecessor and before the predecessor's resignation. The salary, including the increase, was paid without question during the entire time the public officer held the office and until he too resigned. The salary was paid and received in good faith and without the recipient even suspecting that he was being overpaid. In fact it was the public officer who filed this action for a declaratory decree determining his right to receive the extra compensation. There never was any question of his integrity.

I agree with the majority that a conflict exists in the decisions of the courts in other states on the constitutional question with which we are confronted, but I cannot agree that it is impossible to reconcile the basic reasonings or the results reached in the cases which have decided the same or a similar question, although it is difficult. Nor am I willing to concede that such decisions have established no clear weight of authority. There is no doubt that the phrase "his term of office" is, to say the least, ambiguous, but I believe that it is not so doubtful as to be insoluble by a reasonable judicial construction even though I do disagree with the construction which runs counter to mine.

In this case I have an abiding conviction, so strong that I

438

am unable to dispel it from my mind, that the constitutional restriction against the increase or diminution of a salary incident to an office, whether appointive or elective, refers to the *full term* fixed by the fundamental or other law of this State. Moreover, I am convinced that a person elected or appointed to fill a vacancy in an office does not have a term of office in the constitutional sense, but takes only a portion of a full term. In other words, the person filling the vacancy steps into the term as well as the place of his predecessor and becomes subject to the incidents of that term which existed when the term began and no other, including the emoluments.

This Court has never been required to decide the specific constitutional question raised by this appeal. However, as stated, the same or a similar point has been presented to the courts of other jurisdictions. Some of the decisions hold that the constitutional prohibition relates to the *incumbent* of the office, not to the *term* thereof fixed by the Constitution or a statute or ordinance. See *Gaines v. Horrigan,* 72 Tenn. (4 Lea) 608 (1880); *Board of Chosen Freeholders v. Lee,* 76 N. J. L. 327, 70 A. 925 (1908); *State ex rel. Bashford v. Frear,* 138 Wis. 536, 120 N. W. 216 (1909); *Carter v. State ex rel. Taylor,* 77 Okla. 31, 186 P. 464 (1919); *State ex rel. Jackson v. Porter,* 57 Mont. 343, 188 P. 375 (1920); *Lancaster v. Jefferson County,* 115 Colo. 261, 171 P. 2d 987 (1946); *Ballangee v. Fremont County,* 66 Wyo. 390, 212 P. 2d 71 (1949).

On the contrary, courts in some of the states have held that the prohibition refers to the fixed *term* of the office, not to the *incumbent* who may hold the office for the full term or some portion thereof. The real question then is whether the phrase "his term of office" is synonymous with a public officer's "incumbency of the office", or is synonymous with the "full term of the office" created by the Constitution, by an act of the General Assembly, or by a municipal ordinance.

The case of *State ex rel. Wyrick v. City of Ritzville,* 16 Wash. 2d 36, 132 P. 2d 737 (1942), is more nearly on "all fours" with the instant one than any other case. There a resident of Ritzville was appointed to fill a vacancy in the City Council. Before his appointment, an act was passed

providing compensation for councilmen, who had previously served without pay. The provision in the Constitution of the State of Washington prohibiting an increase in salary during a term of office is *virtually identical* to the prohibitory provision in our Constitution.[1] The Supreme Court of Washington, holding that the appointee was simply serving out the unexpired term of his predecessor and was not entitled to the extra compensation, said:

> "* * * [The appointee's] term of office was coeval with that of the person whom he succeeded, and the constitutional provisions applied to him with the same effect as they did to his predecessor. The provisions of the constitution *forbidding a change in the compensation of any public officer during his term of office refer to the term and not to the individual.*" (Emphasis added).

The majority opinion distinguishes the *Wyrick* case, *supra,* from the case now before us because the Washington Constitution also contained a provision that the "salary of any county, city, town, or municipal officer shall not be increased or decreased after his election or during his term of office, * * *"; yet, in that very case, the salary increase accrued *before* the individual—the appointee—began "his" term of office. Applying the definition of "his" in the majority opinion, the decision in the *Wyrick* case, *supra,* was clearly right. Moreover, while the Maryland Constitution does not contain a provision pertaining specifically to municipal officers, there is no doubt that the restriction in Art. III, sec. 35, *supra,* applies with equal force to the public officers of a municipality as well as those of the State. See the recent case of *Pressman v. D'Alesandro,* 211 Md. 50, 125 A. 2d 35 (1956), in which we held invalid certain ordinances of Baltimore City

---

1. The comparable provision in the Washington Constitution is as follows: "The Legislature shall never grant any extra compensation to any public officer, agent, servant or contractor after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during *his term of office.*" (Emphasis added).

440

which were designed to raise the salaries of certain municipal officers during their respective terms of office. In considering the provisions of the constitutional restriction, we pointed out, at p. 55, that the prohibitory provision was *"compre-hensive and should be interpreted broadly to promote its policy, * * *."* (Emphasis added).

In *Bosworth v. Ellison,* 148 Ky. 708, 147 S. W. 400 (1912), a county jailer, who had been elected for a term of four years, resigned and another person had been appointed as his successor. When the elected jailer took office the *per diem* for feeding prisoners was fifty cents. While the elected jailer was still in office the Legislature increased the *per diem* to seventy-five cents. The appointed jailer claimed that he was entitled to be paid at the higher rate, but his contention was denied by the Kentucky Court, which said: "When a person is appointed or elected to fill a vacancy in a term, he merely fills out the term of his predecessor." The majority opinion attempted to minimize the effect of the decision in the *Bosworth* case, *supra,* by pointing out that this Court has ruled to the contrary in *Bowman v. Harford County,* 166 Md. 296, 171 A. 48 (1934). But an analysis of the *Bowman* case reveals that the only point decided therein was that the allowance for prisoners was not "salary or compensation" within the scope of our constitutional provision. The meaning of the phrase "his term of office" was not considered.

Other cases reaching the same conclusions as the Washington and Kentucky courts, under strikingly similar constitutional provisions, include *Larew v. Newman,* 81 Cal. 588, 23 P. 227 (1889); *Storke v. Goux,* 129 Cal. 526, 62 P. 68 (1900); *Foreman v. People ex rel. McEwen,* 209 Ill. 567, 71 N. E. 35 (1904); *Wilson v. Shaw,* 194 Iowa 28, 188 N. W. 940 (1922); *Whitley County Board of Education v. Rose,* 267 Ky. 283, 102 S. W. 2d 28 (1937); *Clark v. Frohmiller,* 53 Ariz. 286, 88 P. 2d 542 (1939); *Robbins v. Lambert,* 43 Cal. App. 2d 463, 111 P. 2d 5 (1941); and *State ex rel. Henneford v. Yelle,* 12 Wash. 2d 434, 121 P. 2d 948 (1942). A comparative analysis of the *Wyrick* and *Bosworth* cases, *supra,* and the *Kearney* case, *infra,* as well as the cases last cited, with the *Gaines, Board of Chosen Freeholders,*

*Bashford, Carter, Jackson, Lancaster* and *Ballangee* cases, all *supra,* previously cited, demonstrates a trend away from the "incumbency" concept to the "full term" thought.

Even the opinions of the Attorneys General of Maryland, which we have often said are entitled to great weight, though not the force of law,[2] are not free from conflict. In 24 Op. A. G.[3] 431, the Attorney General (General Walsh) said, at p. 433:

> "The language of the Constitutional provision deals with 'Public Officers' and 'his term of office' and contemplates a person holding office rather than the office itself."

But in 34 Op. A. G. 123, the Attorney General (General Hammond), who was of the opinion that the constitutional provision against increasing a salary or compensation of a public officer during his term was likewise applicable to the person who fills an unexpired term of office, relied upon *Clark v. Frohmiller, supra,* and particularly *State ex rel. Wyrick v. City of Ritzville, supra,* in making his ruling. In this opinion the Attorney General concluded his opinion by saying:

> "The views expressed in the ruling reported in 24 * * * [Op. A. G.] 431, which may appear at variance with those expressed herein may not have been necessary to the result there reached, and if they were we are constrained to depart from them."

Again in 40 Op. A. G. 171, in which the Attorney General (General Sybert) in ruling on the same constitutional question which is raised by this appeal, in concluding his opinion, after citing 43 *Am. Jur.* 144 and 67 *C. J. S.* 345, said, at p. 174:

---

**2.** See *Burroughs Adding Machine Co. v. State,* 146 Md. 192, 126 A. 127 (1924); *Leitch v. Gaither,* 151 Md. 167, 134 A. 317 (1926); *Read Drug & Chemical Co. v. Claypoole,* 165 Md. 250, 166 A. 742 (1933); and *Popham v. Conservation Commission,* 186 Md. 62, 46 A. 2d 184 (1946).

**3.** Opinions of the Attorney General.

> "In the belief, however, that the ruling in 34
> * * * [Op. A. G.] is soundly reasoned, we see no
> compelling reason to depart therefrom."

Compare 40 Op. A. G. 184, in which it was ruled that the constitutional provision forbidding an increase in the salary or compensation of a public officer during his term of office is not applicable to a person entering an entirely *new* term of office. If they do no more, these seemingly conflicting rulings also point to the trend away from the "incumbency" idea to the "full term" concept.

The majority opinion states that this Court had before it a somewhat similar problem of interpretation in *Hillman v. Boone,* 190 Md. 606, 59 A. 2d 506 (1948), as we now have. I disagree. In that case there was no unexpired term to be filled. The fifteen year term of Judge Melvin ended with his death. The successive appointments of Judge McWilliams and then Judge Anderson constituted no more than an effort on the parts of Governor O'Conor and Governor Lane to appoint a successor to Judge Melvin, who (the successor) was not only entitled to sit for at least one year before being *required* to stand for election to the vacant judgeship, but who would also *actually* stand for election to a *new* term of fifteen years. Both interim appointments filled a vacancy, but neither constituted the filling of an unexpired term. In that case we construed a "vacancy" to mean the latest vacancy. Obviously, the pronoun "his" had reference to the then incumbent of the office, because the term of the deceased judge having ended, there was no existent term to which the pronoun could relate.

As previously stated, there are no Maryland decisions directly in point; however, there are decisions of this Court which lend assistance toward solving the problem with which we are presently confronted. In *Ash v. McVey,* 85 Md. 119, 36 A. 440 (1897), we stated, at p. 130:

> "When an appointment is made to fill a vacancy
> *and for the unexpired term,* such appointee *holds in
> the same manner* as the person whose place he takes

held, *for the residue of the term* and until his successor shall qualify." (Emphasis added).

Again in *Field v. Malster,* 88 Md. 691, 41 A. 1087 (1898), we said, at p. 696:

> " 'The word "term", when used with reference to the *tenure of office,* ordinarily refers to a *fixed and definite time* and does not apply to appointive offices *held at the pleasure of the appointing power.'* " (Emphasis added).

See also *Calvert County v. Monnett,* 164 Md. 101, 164 A. 155 (1933), and *Anne Arundel County v. Goodman,* 172 Md. 559, 192 A. 325 (1937). Accord *Woelfel v. State,* 177 Md. 494, 9 A. 2d 826 (1939).

Then too, it is inconceivable to me that the framers of the Constitution deliberately provided in many instances [4] that a term should be a definite time, and then, without any apparent reason or explanation, provided that all such definite and fixed terms should end upon the death, resignation or removal of the present incumbent. If this is the *real* meaning of the phrase "his term of office" as used in Art. III, sec. 35, *supra,* as the majority says it is, then they have in effect created an "exception" to the fixed and definite terms referred to in the Constitution and in an uncalculated number of statutes and ordinances. In other words, from this day forward there is no longer a residue or remainder of *a term* to be filled

---

4. The places in the Constitution relating to vacancies in an office where the Governor, or certain other state or local officials, are empowered or designated to fill such vacancies by selecting or appointing another qualified person for the "residue of the term", the *"unexpired term of the person whose office has become vacant",* the "remainder of the official term", or words of similar import, include Art. II, sec. 6, relating to the office of Governor; Art. III, sec. 13, relating to the House of Delegates and Senate; Art. IV, sec. 40, relating to Judges of the Orphans' Courts; Art. IV, sec. 43, relating to Justices of the Peace and Constables; Art. IV, sec. 44, relating to Sheriffs; Art. V, sec. 5, relating to the office of Attorney General; Art. V, sec. 11, relating to the office of State's Attorney; and Art. VII, sec. 2, relating to County Surveyors.

in the event of a vacancy. Instead, upon the filling of a vacancy, there is a new term diminished by the length of service of the previous incumbent.

It will suffice to refer to only one statute relating to the question now under consideration—the statute which created the office, and the term thereof, which is the subject of this controversy. Code (1951), Art. 95A, sec. 10 (a), providing for the filling of a vacancy which may occur on the Employment Security Board, contains similar, but even more cogent, language than was used in the Constitution to express the same concept. It provides:

> "Any vacancy occurring *during a term* shall be filled by the Governor, by and with the advice and consent of the Senate, *for the unexpired portion of the term."* (Emphasis added).

In this instance there should be no doubt that the *term* has reference to the six-year term fixed by the statute. I believe that this statute does not mean, or even suggest, that the appointee to fill the vacancy shall have a *new term* diminished by the length of services of the prior incumbent. Here, at least, there is no ambiguity to be resolved. I reiterate that the *term* of the predecessor would not end with his death, resignation or removal; if it did there would remain no "unexpired portion of the term" to be filled.

The case of *Kearney v. Board of State Auditors,* 189 Mich. 666, 155 N. W. 510 (1915), demonstrates vividly one of the many conceivably dangerous situations which might arise under the interpretation adopted by the majority. There the auditors had been appointed for a six-year term and the salary incident to the office was increased during the term. The auditors resigned, were immediately reappointed by the Governor, and then claimed the increase in compensation. The subterfuge failed because the Supreme Court of Michigan declared the word "term" *applied to the office* and *not to the individual,* and denied the increase. The majority dismisses the clear warning of possibly dangerous situations such as that posed by the *Kearney* case, *supra,* because it deems it unnecessary for this Court to determine in the case now before us.

whether the Constitution of this State could be thus circumvented. Again I reiterate that I believe that constitutional provisions should not be decimated by exceptions. Apparently, the majority would apply one rule of construction in the instant case, but would presumably apply another construction if the *Kearney* situation arose in Maryland. I believe it is more reasonable to assume that the delegates to the Convention, which framed our present Constitution, as well as the two which were framed before it, intended the broad constitutional prohibition, now before us to be construed, to be an all-inclusive rule rather than a yardstick of uncertain meaning to be whittled away from time to time to fit the particular situation which may arise in cases involving its interpretation.

Art. III, sec. 35, *supra,* was first written into our fundamental law in 1851 and has not been altered or modified since.[5] From then until now this prohibitory provision has given rise to no litigation on the specific question now before us. This absence of prior litigation appears to be more than a mere happenstance. Indeed it seems to indicate that for more than one hundred years the people of this State have accepted the concept that the restriction prohibits the salary or compensation incident to an office from being either increased or diminished until the holder of such office, or a successor or successors, shall have served the *full* term to which the first holder was either elected or appointed. This attitude toward the restrictive provision should be preserved until such time as the people, by the orderly processes provided in Article XIV of the Constitution, shall see fit to amend this salutary restrictive provision in such manner as will express the wishes of the people in language free from doubt.

I believe that this Court should adopt a rule declaring that the prohibitory provisions of Art. III, sec. 35, *supra,* are so unyielding as to admit of no exceptions, and afford no pre-

---

5. The section embodying the prohibitory provision in the Constitution of 1851 was not changed in any manner whatsoever in either the Constitution of 1864 or the Constitution of 1867 under which we are still governed.

446

text to dispense with, circumvent, or ignore the commonly accepted concept that has withstood the stress and strain of good times as well as the bad since its inception.

The decree of the lower court should have been reversed. I am authorized to state that Judge Prescott concurs in the views herein expressed.