**Gen. 41]** 41

# CONSTITUTIONAL LAW

**STATE'S ATTORNEYS AND SHERIFFS – WHETHER OFFICERS ARE ENTITLED TO RECEIVE AUTOMATIC SALARY INCREASES DURING THEIR TERMS WHEN THOSE INCREASES ARE SET IN ADVANCE BEFORE THE TERM – WHETHER IT WOULD BE AN UNCONSTITUTIONAL REDUCTION IN SALARY TO RESCIND AN AUTOMATIC SALARY INCREASE THAT WAS SET BEFORE THE TERM**

June 28, 2019

*James J. Moran, President*
*County Commissioners of Queen Anne's County*

You have requested our opinion on two related questions regarding the salaries of the State's Attorney and the Sheriff for Queen Anne's County. First, you ask whether those public officers' salaries, which are tied by law to the salary of a District Court judge, will increase with automatic pay raises that District Court judges are scheduled to receive in each of the next three years and that were set before the State's Attorney and Sheriff began their current terms of office. Second, if the salary of the Sheriff will increase, you ask whether the County Commissioners can take any action at this point to freeze the salary of the Sheriff at its current level.

You have provided us with the opinion of the County Attorney on both of these questions, in accordance with our Office's policy requiring a local jurisdiction to do so when requesting an opinion of the Attorney General. The County Attorney concluded that the salaries of the State's Attorney and Sheriff will increase with the automatic pay raises for District Court judges, the next of which will occur on July 1, 2019. In addition, he concluded that any action taken to freeze the salary of the Sheriff at its current level—thus depriving the Sheriff of the automatic pay raises— cannot become effective until the next term of office begins. For the reasons explained below, we agree with the County Attorney.

In our opinion, the salaries for the State's Attorney and Sheriff will increase with the automatic pay raises for District Court judges. Because those pay raises were objectively established by legislation enacted before their current terms of office began, the pay raises do not violate Article III, § 35 of the Maryland Constitution, which prohibits most public officers from having their salaries

either increased or decreased during their terms. In addition, we conclude that the County Commissioners may not freeze the salary of the Sheriff at its current level because any action to prevent the automatic pay raises set by legislation enacted before the Sheriff took office would, in effect, be a reduction in salary that violates Article III, § 35.

# I

## Background

### A. *The Salaries of the State's Attorney and the Sheriff for Queen Anne's County*

Under a series of related legislative enactments, the salaries of both the State's Attorney and the Sheriff for Queen Anne's County have been tied to the salary of a judge of the District Court of Maryland. With respect to the State's Attorney, the Maryland Constitution created the office of State's Attorney in each county and established that the salary is as "prescribed by the General Assembly." Md. Const., Art. V, § 9. The General Assembly, in turn, has prescribed that the salary of the State's Attorney for Queen Anne's County is "equal to the salary of a judge of the District Court of Maryland" and "shall be set before the start of the elected term of office." Md. Code Ann., Crim. Proc. ("CP") § 15-418.[1]

Similarly, with respect to the Sheriff, the Constitution created the office of Sheriff in each county and established that the salary is as "fixed by law." Md. Const., Art. IV, § 44. Accordingly, the General Assembly has provided that the Queen Anne's County Sheriff is to receive a salary set by the County Commissioners of at least $10,000. Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 2-309(s)(1)(i). The County Commissioners, in turn, have determined that, "as of January 1, 2015 and thereafter, the salary of the Sheriff will be equivalent to that of the Queen Anne's County State's Attorney." Queen Anne's County Resolution No. 09-04. Therefore, to determine the salaries that must be paid to the State's Attorney and the Sheriff for Queen Anne's County, we must determine the salary for a District Court judge.

---

[1] A majority of jurisdictions in Maryland have similar provisions setting the salary of their State's Attorney equal to, or at some percentage of, the salary of judges. *See* Title 15, Subtitle 4 of the Criminal Procedure Article.

### B. *The Salary of a District Court Judge*

Judicial salaries in Maryland are established through a multi-step process created by the General Assembly. Every four years, the Judicial Compensation Commission reviews the salaries of judges (district, circuit, and appellate) and makes recommendations about future salaries to the Governor and the General Assembly. CJP § 1-708(c). The Governor is required to include in the State budget the funding necessary to implement the Commission's recommendations, subject to further action by the General Assembly prescribed by the statute. *Id.* No later than the fifteenth day of the session, the General Assembly is required to introduce the Commission's recommendations as a joint resolution in each house. CJP § 1-708(d). Each house has the opportunity to amend the joint resolution to reduce the recommended salary amounts but may not increase them. *Id.* If the General Assembly fails to adopt or amend the joint resolution within 50 days after its introduction, the recommendations of the Commission become law. *Id.* If the General Assembly rejects the recommendations, judicial salaries remain unchanged. *Id.* "Any change in salaries . . . adopted by the General Assembly under this section takes effect as of the July 1 of the year next following the year in which the Commission makes its recommendations." CJP § 1-708(f).[2]

The General Assembly introduced the Commission's most recent recommendations, which were made in 2017, during the 2018 Session. *See* House Joint Resolution 3 (2018); Senate Joint Resolution 5 (2018). After the General Assembly reduced the recommended salary amounts, both houses passed the joint resolution. House Joint Resolution 3 (2018). The amended joint resolution thus became law and took effect on July 1, 2018. *See* CJP § 1-708(f). Accordingly, the current salary amounts for a judge of the District Court of Maryland are as follows:

Beginning July 1, 2018 = $146,333
Beginning July 1, 2019 = $151,333
Beginning July 1, 2020 = $156,333
Beginning July 1, 2021 = $161,333

---

[2] In a year where no salary increase is provided by a joint resolution enacted using this process, judges receive any "general salary increase" that is awarded to all State employees. CJP § 1-703(b)(1). Where a joint resolution establishes a judicial salary increase, however, judges cannot receive any general salary increase that might be awarded to State employees. CJP § 1-703(b)(2).

House Joint Resolution 3 (2018). Those salary amounts, having been established, may not be reduced. *See* CJP § 1-708(d); *see also* Md. Const., Art. IV, § 41H (providing that the salary of a District Court judge may not be reduced during the judge's term of office). The Commission will complete its next set of salary recommendations in 2021. Any change in salaries adopted by the General Assembly as a result of those next salary recommendations will take effect as of July 1, 2022. *See* CJP § 1-708(f).

### C. *Article III, § 35 of the Maryland Constitution*

Under the Maryland Constitution, the salary or compensation of a public officer may not be increased or diminished during the officer's term, unless the officer's term of office is fixed by law at more than four years. Md. Const., Art. III, § 35. The purpose of this constitutional provision is two-fold. First, it "prevent[s] a public officer from using his office for the purpose of putting pressure upon the General Assembly or other authorized agency to award him additional compensation" and, second, it "prevent[s] the General Assembly or other agency from putting pressure on a public officer by offering him increased compensation or threatening a decrease thereof." *Comptroller v. Klein*, 215 Md. 427, 434 (1958).

Although this provision is usually easy to apply, the analysis can become more complicated when the salary of a public officer who is covered by Article III, § 35 is tied by law to the salary of another officer whose term is longer than four years and who is thus exempt from the relevant requirements of Article III, § 35. For example, as applied here, the term of office for both the State's Attorney and the Sheriff is four years, Md. Const., Art. IV, § 44; Md. Const., Art. V, § 7, meaning that they are covered by the requirements of Article III, § 35. However, because the term of office for District Court judges is ten years, Md. Const., Art. IV, § 41D, they may receive salary increases during their terms that the State's Attorney and Sheriff would not be able to receive without violating Article III, § 35. Thus, when a public officer's salary is tied to that of a judge, there can be some ambiguity about when and whether that public officer is entitled to the same salary increases as the judge.

In *Marshall v. Director of Finance for Prince George's County,* 294 Md. 435, 436-439 (1982), for example, the Court of Appeals had to decide whether the State's Attorney for Prince George's County, whose salary was tied to that of a circuit court judge, was entitled to receive a pay raise that had been enacted for

circuit court judges.  Before the State's Attorney took office, the General Assembly had enacted legislation making the salary of the State's Attorney "equal to" the salary of a circuit court judge.  *Id.* at 436.  Then, after the State's Attorney took office, the General Assembly enacted legislation granting a pay raise to circuit court judges.  *Id.*  The Court held that it was unconstitutional to grant the pay raise to the State's Attorney, even indirectly, "by legislation enacted during his term of office."  *Id*. at 439; *see also* 65 *Opinions of the Attorney General* 373, 374 (1980) (reaching the same conclusion).  Instead, the pay raise could not take effect until the beginning of the State's Attorney's next term.  *Marshall*, 294 Md. at 439.  Therefore, in answering your questions, we must analyze the potential effect of Article III, § 35, as interpreted by the Court of Appeals in *Marshall*, on any salary increase for the State's Attorney and the Sheriff for Queen Anne's County.

## II

## Analysis

### A.   *Increasing the Salaries of the State's Attorney and Sheriff*

Your first question is whether the salaries of the State's Attorney and Sheriff are fixed at the exact amount that a District Court judge earned at the beginning of their terms of office or whether their salaries will increase in line with the automatic pay raises that District Court judges will receive over the next three years.  To answer that question, we start with the language of the statutory provision that governs the salary of the State's Attorney for Queen Anne's County.[3]  *See Lockshin v. Semsker*, 412 Md. 257, 276 (2010) (explaining that "[t]o ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute").  That provision states that the salary of the State's Attorney is "equal to" the salary of a judge of the

---

[3] We focus on the statute setting the State's Attorney's salary because Queen Anne's County has provided that the Sheriff's salary is "equivalent to" the State's Attorney's salary.  Queen Anne's County Resolution No. 09-04.  We also defer to county attorneys on the interpretation of county laws, and the County Attorney has concluded (in the opinion provided to our Office) that the salary for the Sheriff will increase in line with the State's Attorney's salary, so long as those increases are constitutional under Article III, § 35.  Thus, under the County's resolution, if the State's Attorney receives the same in-term pay raises as District Court judges, so too will the Sheriff.

District Court of Maryland and that the salary "shall be set before the start of the elected term of office."  CP § 15-418(b)(1).  Under that language, the question is whether the requirement for the salary to be "set" before the start of the State's Attorney's term means that the salary must be fixed at a single, unchangeable amount as of the first day of the term or whether the State's Attorney is entitled to automatic pay raises during the term so long as those pay raises were "set" before the start of the term.

In our view, by including a requirement that the salary be "set" before the beginning of the State's Attorney's term, the General Assembly merely intended to codify the constitutional requirement in Article III, § 35 that a public officer's salary cannot be increased during the officer's term of office.  As our Office has previously observed, statutory provisions like this one that act to delay the effect of salary increases during an officer's term "are but legislative reiterations of the constitutional requisites of Article III, § 35."  65 *Opinions of the Attorney General* at 374.  We think the same is true here.  There is no evidence in the legislative history or otherwise that the General Assembly intended its amendment to impose more stringent requirements than the Maryland Constitution.  Had the General Assembly sought to mandate that the State's Attorney's salary be fixed at the same amount for the entire four-year term, regardless of whether pay raises "set" before the beginning of the term comply with the Maryland Constitution, it likely would have stated that limitation more clearly.[4]

Given our conclusion that the General Assembly intended to codify Article III, § 35, we turn to that constitutional provision to determine whether the pay raises at issue would conflict with the provision's requirements.  As noted above, the Court of Appeals concluded in *Marshall* that, under Article III, § 35, a public officer was not entitled to an indirect pay raise resulting from legislation

---

[4] This conclusion is also supported by the historical context in which the General Assembly adopted the requirement that the State's Attorney's salary be "set" before the start of a new term.  *See* 1982 Md. Laws, Ch. 202.  At the time, there was an ongoing dispute (eventually resolved by the Court of Appeals in *Marshall*) about the entitlement of the Prince George's County State's Attorney to receive a pay raise based on legislation enacted during his term.  *See* 65 *Opinions of the Attorney General* at 378 (Editor's Note).  Our Office had already advised at the time that granting the Prince George's County State's Attorney a pay raise *based on legislation enacted during his term* would violate Article III, § 35, *id.*, and the General Assembly likely sought to clarify its intent to follow the requirements of Article III, § 35 that would have prohibited the pay raise at issue in *Marshall*.

enacted during his term that raised the salary of another officer. *Marshall*, 294 Md. at 438-39. The Court held that "where a public officer's salary is increased, directly or indirectly, by legislation enacted *during his term of office*, there is a violation of Article III, § 35." *Id.* at 439 (emphasis added). However, the Court expressly left open the question at issue here, that is, whether the State's Attorney would have been entitled to a pay raise during his term if that future pay raise had been set by legislation enacted *before* the beginning of his term of office. *See id.* at 439 n.1 (declining to "pass upon" the constitutionality of a statute providing for annual increases in the salary of the Prince George's County State's Attorney that was enacted before the State's Attorney's term began).

Although *Marshall* did not consider the constitutionality of an in-term salary increase set before a public officer's term began, our Office has long been of the view that such an increase does not violate Article III, § 35, provided that certain criteria are met. In 1975, for example, we concluded that the General Assembly could constitutionally provide in advance for automatic cost-of-living adjustments over the course of a term, so long as the adjustments were pre-determined based on objective standards, were "announced in advance of a new term," and were "designed to take effect at stated intervals after the new term had commenced." 60 *Opinions of the Attorney General* 823, 832 (1975); *see also* 67 *Opinions of the Attorney General* 340 (1982) (reiterating that conclusion).

Similarly, when advising that a State's Attorney whose salary was tied to a judge could not receive a raise for judges enacted during his term, we concluded that an in-term increase would have been permissible had it occurred "[n]ot by virtue of any subsequent legislative action, but *solely* by the automatic operation of the very law in effect at the beginning of the term" where that law "definitely prescribed and fixed the compensation incident to the office." 65 *Opinions of the Attorney General* at 375 (quoting *Yuma County v. Sturges*, 140 P. 504, 506 (Ariz. 1914) (emphasis in original)). We reasoned that, when salary "increases are fixed prior to the commencement" of a term, there is no opportunity for public officers to exploit their offices to obtain a salary increase during their terms, and the purpose of Article III, § 35 is thereby "fully and effectively preserved." *Id.* at 374-75 (quoting 60 *Opinions of the Attorney General* at 832 (emphasis omitted)). We thus suggested that, if the pay raises at issue there for judges—and by extension the State's Attorney—had been "known" and "objectively established

in advance of" the term, they would not have constituted invalid increases in salary *during* the State's Attorney's term. *Id.*[5]

Applying that same rationale, it would not violate Article III, § 35 for the State's Attorney and Sheriff to receive, during their terms, the same automatic pay raises that were set in advance for District Court judges. Although our earlier opinions preceded the Court of Appeals decision in *Marshall*, our conclusion is entirely consistent with that decision. Unlike the salary increases in *Marshall*, which the Court repeatedly emphasized were enacted "during" the State's Attorney's term, *see, e.g.*, *Marshall*, 295 Md. at 438-39, the salary increases here were enacted (and became legally effective) before the current terms of the State's Attorney and Sheriff began. Therefore, there is no risk that the State's Attorney or the Sheriff will be able to use their offices to put pressure on other officials "to award [them] additional compensation" during their terms or that other officials will put undue "pressure on [them] by offering [them] increased compensation" during their terms. *Klein*, 215 Md. at 434.

Indeed, our Office reached the same conclusion in a 2006 letter of advice, in response to a similar inquiry about the salary payable to the State's Attorney for Queen Anne's County where

---

[5] That conclusion is consistent with the "majority rule" in other states, under which future changes in compensation set before the beginning of a public officer's term according to a fixed formula are permissible under those states' analogous constitutional provisions. *See Stiftel v. Malarkey*, 384 A.2d 9, 16 (Del. 1977) (collecting cases). Under that majority rule, attorneys general in other states have applied similar principles to conclude that "[s]tatutory provisions granting automatic periodic salary increases during an officer's term have been found to be constitutional where they were in effect before the commencement of the term." 1986 Ohio Op. Att'y Gen. No. 86-106, 1986 WL 237932 (Dec. 19, 1986) (concluding that "an incremental salary schedule, under which the amount paid to each [officer] in question automatically increases annually, either by a set dollar amount or by a specified percentage" would be constitutional); *see also*, *e.g.*, Neb. Op. Att'y Gen. No. 09009, 2009 WL 2988032 (Aug. 17, 2009) (concluding that automatic salary increases were permissible if enacted before the officer's term); 72 Wis. Op. Att'y Gen. 45, 1983 WL 180865 (Apr. 15, 1983) (concluding that "a clearly established step salary plan which would provide for different predetermined and readily ascertainable rates to apply during different years of a fixed term" would be constitutional); 1980 Colo. Op. Att'y Gen. No. 80, 1980 WL 109280 (Oct. 29, 1980) (concluding that "incremental increases" in the salary of district attorneys are "constitutionally permissible, provided they are established prior to the commencement of the term of office.").

the Judicial Compensation Commission had provided in advance for future pay raises for District Court judges. *See* Letter from Robert N. McDonald, Chief Counsel for Opinions & Advice, to Frank Kratovil, State's Attorney for Queen Anne's County (Aug. 21, 2006). The letter advised that, because the law at the beginning of the State's Attorney's term provided for "known" and "objectively established" increases in the salary of District Court judges at precise intervals during the term, the State's Attorney's salary could increase by the same amounts at those same intervals. *Id.* at 4 (quoting 65 *Opinions of the Attorney General* at 375-76). The letter cautioned, however, that if the General Assembly changed the salary of District Court judges during the State's Attorney's term, the salary of the State's Attorney could not constitutionally reflect that change until the beginning of the next term. *Id.*

In our view, the same principles apply here to both the State's Attorney and the Sheriff for Queen Anne's County. The General Assembly set the salaries of District Court judges, including automatic pay raises, in 2018, before the State's Attorney and Sheriff began their current terms of office. Therefore, both the State's Attorney and the Sheriff may receive, during their current terms, the automatic pay raises that were objectively established for District Court judges in 2018, without violating Article III, § 35 of the Maryland Constitution. Beginning July 1, 2019, the State's Attorney and Sheriff will earn $151,333, followed by $156,333 on July 1, 2020, and $161,333 on July 1, 2021.

Although we conclude that the salary increases discussed above do not violate Article III, § 35, the answer to your question in future years will always be a fact-specific one that depends on when salary legislation is enacted, when a public officer's term of office begins, and whether the salary increase was known and objectively established in advance of the officer's term. For example, when the General Assembly acted on the most recent recommendations of the Judicial Compensation Commission, it set automatic pay raises for District Court judges in 2018, 2019, 2020, and 2021. *See* House Joint Resolution 3 (2018). Because the current terms of the State's Attorney and Sheriff did not begin until 2019, these pay raises went into effect during the prior four-year term for those offices. As a result, the State's Attorney and Sheriff could not receive the first pay raise for District Court judges (which occurred on July 1, 2018) until their new terms of office began in January of 2019. While they may now receive the remaining automatic pay raises on the same schedule as the District Court

judges, they may not receive any additional pay raises granted to judges during this term.  Any additional pay raises would be the result of legislation enacted after their terms of office began and, under *Marshall*, would violate Article III, § 35.[6]  In the final analysis, the State's Attorney and Sheriff are entitled to the same automatic pay raises afforded to District Court judges, so long as those pay raises were known, enacted, and objectively established in advance of their current terms of office.

## B.    *Freezing the Salary of the Sheriff*

Your second question is whether the County Commissioners may take any action at this point to freeze the salary of the Sheriff at its current level.  To answer that question, we must determine whether preventing an automatic pay raise from taking effect, when that pay raise was set before the start of a public officer's term, constitutes a reduction in salary that violates Article III, § 35.  The Court of Appeals has established, just as clearly as it has for an increase in salary, that a reduction in salary cannot occur based on legislation enacted after a public officer's term has begun.  *See, e.g., Calvert County Commissioners v. Monnett*, 164 Md. 101 (1933).  In fact, even if a public officer were to agree to accept a reduction in salary, that agreement would be void as against public policy.  *See County Commissioners of Anne Arundel County v. Goodman*, 172 Md. 559 (1937).  Thus, if a salary freeze in the face of a pre-determined automatic pay raise constitutes a reduction in salary in violation of Article III, § 35, any action taken by the County Commissioners to freeze the salary of the Sheriff would be ineffective during the current term of office, even if the Sheriff were to voluntarily accept such a freeze.

Although no Maryland court has decided this question, courts and attorneys general in other states with analogous constitutional provisions have persuasively reasoned that revoking an automatic pay raise set to occur during a public officer's term is an unconstitutional reduction of the officer's salary.  The Delaware Supreme Court, for instance, held that its state legislature could not constitutionally rescind automatic cost-of-living adjustments for

---

[6] As noted above, in years where judges do not receive salary increases via the Judicial Compensation Commission process, they receive any "general salary increase" that is awarded to all State employees.  *See* footnote 2, *supra*.  Given that judges are entitled to salary increases through the Commission process in each of the next three years, we do not need to decide whether the State's Attorney would be entitled to a salary increase where District Court judges obtain a raise as part of a general salary increase for State employees as a whole.

public officers that were established in advance of their terms and objectively tied to the federal government's cost-of-living index. *Stiftel*, 384 A.2d at 16. The Court explained that, even though the officers' current salary did not yet reflect the salary adjustments, the purpose underlying the constitutional provision "would apply as well to a threat of removing a salary adjustment." *Id.* at 15. After all, the Court noted, the "potential duress" on the officer "would be the same," regardless of whether the legislature reduced the salary at the commencement of the officer's term or future automatic increases that had been established before the officer's term began. *Id.*; *see also Olson v. Cory*, 636 P.2d 532, 539 (Cal. 1980) (concluding that legislation restricting automatic cost-of-living increases for judges, which had been objectively tied to the consumer price index, constituted a reduction in salary that could not take effect during those judges' terms).

Likewise, the Washington Attorney General reached the same conclusion when asked whether it was constitutionally permissible to rescind automatic pay raises for members of the legislature that had been set before the beginning of their terms. 1981 Wash. Op. Att'y Gen. No. 17, 1981 WL 139671 (Nov. 5, 1981). In that situation, a law in effect prior to the current term of office for certain legislators had established that their salaries would increase by a set amount in each of the next four years. *Id.* After the terms of those legislators had begun, the Attorney General was asked whether the legislature could rescind those future salary increases. *Id.* In response, the Attorney General reasoned that any such rescission would be an unconstitutional reduction in salary during the legislators' terms, as it would eliminate the "periodically increasing level of compensation already provided for in the law when the current terms of the affected legislators commenced." *Id.* Put another way, the legislators' salaries were "vested at the level . . . provided for" by law at the beginning of their terms of office, and the promise of those future automatic increases could not be revoked. *Id.*; *see also* 60 Op. Cal. Att'y Gen. 153, 1977 WL 24871 (May 25, 1977) (concluding with respect to the question that the California Supreme Court eventually answered in *Olson v. Cory* that "the salaries which an elected officer is to receive during his or her term are fixed at the beginning thereof" and that the legislature therefore could not rescind automatic salary increases

for judges that had taken effect before the beginning of the judges' terms).[7]

In our opinion, the same logic applies here. When, as here, the law in effect at the beginning of a public officer's term provides for automatic pay raises to occur during that term based on objective and pre-determined criteria, the law has essentially fixed in advance the compensation for those future years. *See* Part II.A, *supra*. Thus, suspending those pay raises would disrupt the public officer's settled expectations and would undermine one of the core purposes underlying Article III, § 35, namely, to prevent a legislative body from putting undue pressure on a public officer by threatening that officer's compensation. *See Klein*, 215 Md. at 434. As the Delaware Supreme Court recognized, the threat that a legislative body might suspend an officer's future salary increases—when those increases are supposed to be automatic and were objectively established before the officer's term began— could put just as much pressure on the officer to submit to the legislature's will as the threat of a reduction in the officer's current salary. *Stiftel*, 384 A.2d at 15.

Applying that constitutional rule to the Sheriff for Queen Anne's County, the law in effect at the beginning of his term provided that his salary was to be "equivalent to" that of the State's Attorney. Queen Anne's County Resolution No. 09-04. The law governing the State's Attorney's salary, in turn, made that officer's

---

[7] A federal court has also held that legislation to block future cost-of-living adjustments for federal judges from taking effect violated the Compensation Clause, under which compensation for federal judges "shall not be diminished during their Continuance in Office." *Beer v. United States*, 696 F.3d 1174 (Fed. Cir. 2012) (en banc) (quoting U.S. Const., Art. III, § 1). The Court concluded that the process for determining the adjustments was sufficiently "precise and definite" to give rise to a reasonable expectation that the judges should have received those adjustments. *Id.* at 1183-84. In reaching this conclusion, the Court distinguished an earlier Supreme Court decision that had held Congress did not violate the Compensation Clause by stopping certain cost-of-living adjustments from going into effect. *Id.* at 1181 (citing *United States v. Will*, 449 U.S. 200 (1980)). In *Will*, the Federal Circuit explained, the Congressional scheme for cost-of-living adjustments at the time was so discretionary and uncertain that it "prevented the creation of firm expectations," and there was no entitlement to the pay raise until it actually became due and payable. *Id.* In our situation, the future pay raises for District Court judges—and therefore for the State's Attorney and Sheriff—are far more definite and automatic than the schemes at issue in either *Will* or *Beer*. We thus find the authority from other states to be more relevant in this context.

salary "equal to" that of a District Court judge, CP § 15-418(b), and the law governing the salaries for District Court judges provided in advance for precise and definite pay raises over the next four years. *See* House Joint Resolution 3 (2018). Moreover, those pay raises were automatic in that, by express operation of law, they became effective as of July 1, 2018, and no further legislative or executive action is required for the pay raises to occur at the designated time. *See* CJP § 1-708(f). Therefore, any action to freeze the salary of the Sheriff—thus depriving the Sheriff of those automatic pay raises—would effectively be a reduction in salary. The County Commissioners may, of course, modify the salary of the Sheriff in the same manner they set it, but any such modification would only have prospective effect when a new term begins.

## III

### Conclusion

In sum, we conclude that the salaries of the State's Attorney and the Sheriff for Queen Anne's County will increase with the increases in the salaries of District Court judges, to the extent the General Assembly enacted legislation setting automatic pay raises before their current terms of office began. We also conclude that the County Commissioners may not take action to freeze the salary of the Sheriff at its current level because preventing an automatic pay raise that was set to occur by legislation enacted before the Sheriff's current term is a reduction in salary that would violate Article III, § 35 of the Maryland Constitution.

Brian E. Frosh
Attorney General of Maryland

Alan J. Dunklow
Assistant Attorney General

Patrick B. Hughes
Chief Counsel, Opinions and Advice